**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------- x
THE ESTATE OF YARON UNGAR, by and            :
through its Administrator, David Strachman, DVIR :
UNGAR, minor, by his guardians and next friends, :
YISHAI UNGAR, minor, by his guardians and next :
friends, PROFESSOR MEIR UNGAR, JUDITH        :
UNGAR, individually and in their capacity as legal :
guardians of Petitioners Dvir and Yishai Ungar, :
RABBI URI DASBERG, JUDITH DASBERG, in        :
their capacity as legal guardians of Petitioners Dvir :   Case No. 09-cv-1227 (PKC)
and Yishai Ungar, AMICHAI UNGAR, DAFNA       :
UNGAR and MICHAL COHEN,                      :
                                             :
                Petitioners/Judgment Creditors, :
                                             :
              - against -                    :
                                             :
NATIONAL BANK OF EGYPT                       :
23rd July St. – El Saleh Square              :
El Arish, Egypt,                             :
                                             :
                Respondent/Garnishee.        :
-------------------------------------------------------------- x
```

## DECLARATION OF HISHAM OKASHA

Hisham Okasha, under penalty of perjury under the laws of the United States of America, hereby declares as follows:

1.      I am the Deputy Chairman of the National Bank of Egypt ("NBE"). I make this Declaration upon my own personal knowledge; my review of NBE's business records; the true and correct copies and certified translations of documents attached hereto and discussed herein; and my review of the accompanying Declaration of Mona Zulficar and the exhibits thereto.

2.      I am responsible for overseeing Risk, Operations and the Legal Department of NBE. As such I supervise the work of the Chief Operating Officer, the Chief Risk Officer and the Director of the Legal Department of NBE, including its 247 branches throughout Egypt.

3.  I am fluent in Arabic and English.

4.  I make this declaration in support of the motion to dismiss the Petition for Turnover (the "Petition") brought by the Estate of Ungar, et al., (the "Petitioners") against NBE based upon an unsatisfied $116,409,123.00 default judgment (the "default judgment) in an action in the federal district court for Rhode Island, under case number 00-105L, against Hamas, a.k.a, Islamic Resistance Movement ("Hamas"), the Palestinian Authority, the Palestinian Liberation Organization and others (the "Rhode Island Action").

5.  NBE is a commercial bank wholly owned by the State of Egypt.

6.  NBE is headquartered at 1187 Corniche El Nil, Cairo, Egypt.

7.  NBE is a private legal person under Egyptian law.

8.  NBE is not incorporated in the United States nor created under the laws of any country besides Egypt.

9.  NBE is the oldest commercial bank in Egypt, established in 1898.

10.  NBE was decreed the Central Bank of Egypt in 1951, which status was confirmed by the Banking Act in 1957.

11.  In 1960, a separate Central Bank of Egypt was created and NBE was nationalized by the Egyptian government.  After nationalization, NBE continued to carry out the functions of the Central Bank of Egypt where the latter had no branches.

12.  NBE remains today a 100% Egyptian state-owned bank.

13.  Since the mid-1960s, NBE has been in charge of issuing and managing saving certificates on behalf of the Egyptian government.

14.     NBE, due to its status as an Egyptian state-wholly owned bank, is sometimes called upon to accept deposits, to hold accounts and to transfer funds at the instruction of various agencies and instrumentalities of the Egyptian government.

15.     The El Arish Branch of NBE is the same legal entity as NBE.

16.     The El Arish Branch is also wholly owned by the State of Egypt and located in Egypt.

17.     NBE has a bank branch in New York.

18.     NBE's New York branch has no authority or control and has never had any authority or control over any account held at the El Arish Branch or at NBE's headquarters in Cairo.

19.     **Contrary to the allegations in the Petition, neither Hamas nor its alleged leader, Mr. Ayman Mohamed Saleh Taha ("Taha") holds or has ever held an account with NBE; and neither Hamas nor Taha deposited the funds which are the subject of the Petition (the "Funds") into an account held at NBE.**

20.     In addition, neither Hamas nor Taha had any access to or control over the Funds put on deposit with NBE by the Egyptian Intelligence Authority into an account in its own name at the El Arish Branch, as discussed below.

21.     Neither Hamas nor Taha at any point made a demand or other inquiry of NBE with respect to the Funds.

22.     In any event, NBE would not have recognized such a request from Hamas or Taha if made, since the accounts in which the Funds were deposited and held at NBE in Egypt, both in its El Arish Branch and its headquarters, were in the name of the Egyptian authorities, as specified below, and subject to their exclusive control.

23.     **The Funds were seized by the competent Egyptian authorities acting pursuant to Egyptian law, as discussed in the accompanying Declaration of Mona Zulficar, and NBE has at all times acted pursuant to their instructions in holding and disposing of the Funds.**

24.     It is my understanding that on or about February 5, 2009, the Egyptian Customs Authority ("Customs") and the Intelligence Authority stopped Taha at the Rafah Customs Departure Hall, which is on the Egyptian side of the border between Egypt and Gaza. *See* Zulficar Declaration at Exhibit 10 (judicial order issued by the Attorney General on 24 February 2009 that prosecution of the criminal case No. 1330 for the year 2009 against Taha be dropped).

25.     It is my understanding that the aforementioned authorities searched Taha's luggage and found that he was attempting to secretly transport the Funds, *i.e.*, 9 million U.S. Dollars and 2 million Euros in cash, across the Egyptian border in violation of Egyptian law, as explained in the accompanying Zulficar Declaration. *See id.*

26.     The Intelligence Authority detained Taha and seized the Funds discovered on him. On the same day, February 5, 2009, the Intelligence Authority deposited the Funds into a suspense account it opened at NBE's El Arish Branch in its own name in order to hold the Funds while legal proceedings were pending against Taha. *See* attached hereto as Exhibit A, a true and correct copy of a document in Arabic and accompanying certified English translation showing the document to be a letter from the Head of the Intelligence Authority to NBE's Chairman, dated February 5, 2009 ("Intelligence Authority Letter to NBE Egypt"); attached hereto as Exhibit B, a true and correct copy of a document in Arabic and accompanying certified English translation showing the document to be a letter from the Chairman of the Customs Authority to the Chairman of NBE, dated February 16, 2009 ("Letter Re: Seizure Report No. 1").

27.     The Intelligence Authority informed NBE with respect to the Funds being put on deposit that Customs was conducting legal procedures in connection with violations of Article 116 and 126 of the Egyptian Central Bank, Banking Sector and Foreign Exchange Law Number 88 (2003) (the "Banking Law").  *See* Ex. A (Intelligence Authority Letter to NBE Egypt).

28.     On February 16, 2009, the Chairman of Customs wrote to NBE ordering it to transfer the Funds to the account of the Financial and Commercial Prosecution (the "Public Prosecutor's Office") held with NBE at NBE's headquarters in Cairo.  *See* Ex. B (Letter Re: Seizure Report No. 1).  NBE did so.

29.     It is my understanding that the following day, on February 17, 2009, the Governor of the Central Bank of Egypt, acting pursuant to Article 131 of the Banking Law, wrote to the Attorney General at the Public Prosecutor's Office (the "Attorney General") permitting commencement of an investigation and initiation of criminal proceedings against Taha based on his suspected violations of Articles 111 and 116 of the Banking Law.

30.     A day later, on February 18, 2009, the Attorney General commenced prosecution of Taha and wrote to NBE ordering it to transfer the Funds to the Public Prosecutor's Office's unified bank account held with the Central Bank of Egypt, as the Funds were subject to confiscation based on the outcome of Taha's criminal case.  *See* attached hereto as Exhibit C, a true and correct copy of a document in Arabic and accompanying certified English translation showing the document to be a letter from the Attorney General to the Chairman of NBE, dated February 18, 2009.

31.     The following day, on February 19, 2009, pursuant to orders of the Attorney General, NBE transferred the Funds into the account of the Public Prosecutor's Office at the

Central Bank of Egypt, specifying that the deposits were made pending the conclusion of Taha's criminal case.

32.     On February 24, 2009, the Attorney General halted prosecution of Taha after he admitted his violations and waived any right to the Funds, which were confiscated for the benefit of the State Treasury of Egypt. *See* Zulficar Declaration at Exhibit 10.

33.     It is my understanding that the Attorney General subsequently ordered transfer of the Funds to the account of the State Treasury held at the Central Bank of Egypt.

34.     **<u>The events as described herein took place entirely within Egypt.</u>**

35.     The Funds were at all times located in Egypt.

36.     The Funds were never transferred to NBE's New York branch.

37.     The Funds never came within the possession or control of NBE's New York branch.

38.     The Funds were never posted to the books of NBE's New York branch.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Cairo, Egypt,  on September 30, 2009.

Hisham Okasha
Deputy Chairman, NBE