UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
THE ESTATE OF YARON UNGAR, by and
through its Administrator, David Strachman, DVIR
UNGAR, minor, by his guardians and next friends,
YISHAI UNGAR, minor, by his guardians and next
friends, PROFESSOR MEIR UNGAR, JUDITH
UNGAR, individually and in their capacity as legal
guardians of Petitioners Dvir and Yishai Ungar,
RABBI URI DASBERG, JUDITH DASBERG, in
their capacity as legal guardians of Petitioners Dvir        **Case No. 09-cv-1227 (PKC)**
and Yishai Ungar, AMICHAI UNGAR, DAFNA
UNGAR and MICHAL COHEN,

      Petitioners/Judgment Creditors,

     - against -

NATIONAL BANK OF EGYPT
23rd July St. – El Saleh Square
El Arish, Egypt,

      Respondent/Garnishee.
------------------------------------------------------------------ x

## DECLARATION OF MONA ZULFICAR

Mona Zulficar, under penalty of perjury under the laws of the United States of America, hereby declares as follows:

1. I am the named partner and chair of the Executive Committee of the law firm of Zulficar & Partners located in Cairo, Egypt.

2. Zulficar & Partners has 27 attorneys.

3. I have been practicing in the fields of banking, finance and capital markets for 29 years. I have particular expertise in banking operations, credit, mergers and acquisitions as well as investment banking.

- 2 -

4. My clients include the Respondent National Bank of Egypt ("NBE"), the Central Bank of Egypt and other banking institutions, including Banque Misr, Citibank, N.A Egypt Branch, Commercial International Bank (Egypt), HSBC Bank, Credit Agricole Egypt, National Societe Generale Bank and the Bank of New York Mellon.

5. I am currently an expert member of the Board of Directors of the Central Bank of Egypt.

6. I have also been a dedicated human rights and women's rights activist in Egypt and internationally for three decades. Amongst other activities, I am currently an elected member of the Human Rights Council Advisory Committee of the United Nations.

7. Prior to starting Zulficar & Partners in June, 2009, I was Chair of the Executive Committee and Senior Partner of the Shalakany Law Office ("Shalakany"), a leading law firm in the Middle East, where I became a partner in 1978.

8. I am fluent in Arabic and English.

9. Attached hereto as Exhibit 1 is my curriculum vitae.

10. I make this declaration based upon my own personal knowledge, my review of the provisions of Egyptian law discussed below, my knowledge of the legal status and workings of the Egyptian governmental actors discussed below and my review of the facts presented in the accompanying Declaration of Hisham Okasha, Deputy Chairman of NBE (the "Okahsa Declaration").

11. I make this declaration in support of the motion to dismiss the Petition for Turnover (the "Petition") brought by the Estate of Ungar, et al., (the "Petitioners") against NBE.

12. **The following actors, as described in the Okasha Declaration, are agencies and instrumentalities of the State of Egypt.**

    a.    Under Articles 1 and 5 of Egyptian Law Number 100 (1971) known as the "Intelligence Law," the Egyptian Intelligence Authority (the "Intelligence Authority") is a government actor or public legal person which has the status of law enforcement and the authority to seize impermissible amounts of cash being carried across Egyptian borders. Attached as Exhibit 2 are true and correct copies of Articles 1 and 5 of Law Number 100 (1971) in Arabic together with a certified English translation of relevant excerpt of Articles 1 and 5.

    b.    The Egyptian Customs Authority ("Customs") is also a government actor, or public legal person, pursuant to Egyptian law. Attached as Exhibit 3 is a true and correct copy of Article 4 of Law Number 66 of the year 1963 in Arabic, together with a certified English translation thereof. Customs is under the authority of the Ministry of Finance of the Egyptian government, which is also shown in the attached Article 4.

    c.    The Attorney General for Commercial and Financial Prosecution (the "Attorney General") is a member of the Public Prosecutor's Office and as such a member of the Judiciary, pursuant to Egyptian law. The Attorney General is responsible inter alia for enforcing the provisions of the Banking Law, as defined below, and for criminally prosecuting violators of such laws. Attached as Exhibit 4 is a true and correct copy of Article 26 of Law Number 46 of the year 1972 in Arabic, together with a certified English translation thereof; and as Exhibit 5, a true and correct copy of Article 21 of Law Number 46 of the year 1972 in Arabic, together with a certified English translation thereof.

    d.    Similarly, the Central Bank of Egypt is an instrumentality of the Egyptian State, or a public legal person reporting directly to the President of Egypt, pursuant to Egyptian law. It

is responsible for maintaining price stability and the solidity and security of the banking sector, within the framework of the economic policy of the Egyptian State. As such, the Central Bank sets the objectives of the monetary policy, in coordination with the government, and then designs and implements the monetary policy, as well as the banking and credit policies of Egypt. The Central Bank also issues banknotes, and licenses and supervises the performance of all banks registered in Egypt. Attached as Exhibit 6 are true and correct copies of extracts of Articles 1 and 5 of Law Number 88 of the year 2003 concerning the Central Bank, the Banking Sector and Foreign Exchange, as amended (the "Banking Law") in Arabic, together with a certified English translation thereof.

13.     **The aforementioned Egyptian State agencies and instrumentalities acted pursuant to Egyptian Law with respect to the Funds which are the subject of the Petition.**

14.     Specifically, as recounted in the Okasha Declaration, the Egyptian Customs and Intelligence Authority stopped Mr. Ayman Taha on the Egyptian side of the Egypt-Gaza border, detained him and seized 9 million U.S. Dollars and 2 million Euros in cash (the "Funds") that he was secretly attempting to carry across the border.

15.     In doing so, Customs and the Intelligence Authority acted pursuant to the provisions of Article 116 of the Egyptian Banking Law, which forbids the transport of foreign currency in cash exceeding 10,000 U.S. Dollars in or out of Egypt without disclosure by the person carrying the currency when entering or leaving the country. Attached as Exhibit 7 is a true and correct copy of Article 116 of the Banking Law in Arabic, together with a certified English translation thereof.

16.     For this offense, Mr. Taha, pursuant to Article 126 of the Banking Law, was subject to a punishment of imprisonment of up to three months and/or payment of a fine of between

5,000 to 20,000 Egyptian pounds. In addition to punishing the individual for violating Article 116 of the Banking Law, a competent Egyptian court is also required pursuant to Article 126 of the Banking Law to order the confiscation of amounts seized by Egyptian law enforcement officers, and if seizure and confiscation are not made, the court must order the payment of a fine equivalent to the amount which would have been seized. Attached as Exhibit 8 is a true and correct copy of an extract of Article 126 of the Banking Law in Arabic, together with a certified English thereof.

17. All funds confiscated pursuant to the Banking Law become the property of the State of Egypt, represented by the Egyptian State Treasury, *i.e.*, the Ministry of Finance of Egypt.

18. Upon depositing the Funds seized from Mr. Taha into a suspense account in its own name at NBE's El Arish Branch, the Egyptian Intelligence Authority was deemed under Egyptian law to be the legal owner of the Funds pending finalization of the confiscation procedures.

19. Pursuant to Article 131 of the Banking Law, the Attorney General must obtain permission from the Governor of the Central Bank of Egypt or the Prime Minister of Egypt, to initiate criminal proceedings against an individual for suspected violations of the aforementioned provisions of the Banking Law. Attached hereto as Exhibit 9 is a true and correct copy of Article 131 of the Banking Law in Arabic, together with a certified English translation thereof.

**20. <u>The legal and criminal proceedings against Mr. Taha have concluded; and the Funds are the property of the State of Egypt, as represented by its State Treasury.</u>**

21. The criminal proceedings against Mr. Taha have been concluded by a judicial order issued by the Attorney General on 24 February 2009 that prosecution of the criminal case No. 1330 for the year 2009 be dropped for absence of an important basis for prosecution,

particularly since the indicted, Mr. Taha, has waived all his rights in the seized Funds in favor of the State Treasury, *i.e.*, the Government of Egypt. Attached hereto as Exhibit 10 is a true and correct copy in Arabic of the said judicial order together with a certified English translation thereof.

22. The aforementioned judicial order was made in compliance with Article 126 of the Banking Law attached hereto as Exhibit 8, which required either the confiscation of the Funds, or, if seizure and confiscation had not been made, payment of a fine equivalent in amount to the Funds.

23. Per the Okasha Declaration, the Funds having been transferred to the account of the State Treasury held at the Central Bank of Egypt, they become the property of the State of Egypt.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Cairo, Egypt on September 30, 2009.

_____
Mona Zulficar